IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-03119

GT INDUSTRIAL PRODUCTS, LLC, a Colorado limited liability company,

    Plaintiff,

v.

NFI INTERACTIVE LOGISTICS, LLC, d/b/a NFI LOGISTICS, LLC, a Virginia limited liability company,

    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff GT Industrial Products, LLC ("GT"), by and through its undersigned attorneys, for its Complaint against Defendant NFI Interactive Logistics, LLC d/b/a NFI Logistics, LLC ("NFI"), alleges as follows:

### INTRODUCTION

1. GT and NFI had a simple relationship—GT retained NFI to ship its products from its central distribution facility in Aurora, Colorado, to its various customers around the country. But, on shipment after shipment, a portion of GT's products did not make it to the end-customer. Instead, it appears that select products sent on each of NFI's trucks over a several month period were removed during transport. Indeed, a number of the missing products began showing up on an unauthorized Amazon marketplace retailer's website. GT did not sell to that retailer nor did any of GT's intended customers. In any event, GT's customers have refused to pay for the missing products and GT has incurred significant damages. Despite GT's multiple claims regarding its lost products, NFI has

refused to compensate GT for its losses. Accordingly, GT brings the present action arising out of NFI's failure to deliver all of GT's products in good condition in accordance with the Carmack Amendment, 49 U.S.C. § 14706.

## PARTIES

2. GT Industrial Products, LLC is a Colorado limited liability company with its principal place of business in Aurora, Colorado.

3. Defendant NFI Interactive Logistics, LLC is a Virginia limited liability company with its principal place of business in Camden, New Jersey.

## JURISDICTION AND VENUE

4. This action arises under the Carmack Amendment, 49 U.S.C. § 14706, related to the shipment of goods in interstate commerce.

5. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.

6. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendant NFI because NFI conducts business in this District and specifically entered into an agreement to ship products from this District.

8. Pursuant to 28 U.S.C. § 1391 and 49 U.S.C. § 14706(d)(2), venue is proper within this District because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## **GENERAL ALLEGATIONS**

9. GT is a lighting manufacturing company that specializes in high quality and competitively priced LED lighting product lines. Using third-party motor carriers, GT supplies its products to retailers across the United States.

10. In August 2023, GT decided to change its motor carrier and, after considering bids from a number of carriers, selected NFI to transport its products.

11. NFI then sent GT its shipping package, which included NFI's operating authority issued by Federal Motor Carrier Safety Administration that identified NFI as an approved carrier, its payment instructions with NFI's W-9 tax form, and its certificate of liability insurance.

12. Based on this information and NFI's proof of good standing, GT hired NFI as its motor carrier to transport GT's products to its customers across the United States.

13. For each shipment, GT placed a shipment order to NFI and NFI would send a truck to GT's central distribution center in Aurora, Colorado, for products to be loaded by GT.

14. Typically, NFI used subcontractors to pick up GT's shipments.

15. When the trucks arrived, GT loaded and sealed its shipments containing its products onto the truck. The sealed shipments included a packing slip created by GT that identified all the products in the sealed shipment and the location for delivery.

16. On a few occasions, the shipments also included thermostats from EME Delaware whom GT contracted with to ship the thermostat products to Menards, Inc. ("Menards").

3

17. The shipping details were memorialized in a bill of lading issued by NFI, which identified the shipment locations, the products being shipped, the billing details, and the seal number.

18. The products were then shipped to GT's end-customers identified on the bill of lading.

19. NFI notified GT when each shipment was delivered and sent GT an invoice for the completed shipment.

20. Invoice payments were thereafter made to NFI.

21. This shipping pattern began in late 2023 and continued through Spring 2024.

22. On at least twenty-three occasions during that period, however, NFI failed to ensure that all of GT's and EME's products were delivered to GT's clients, Menards and Fleet Farm E-Commerce Enterprises, LLC ("Fleet Farm").

23. That is, both Menards and Fleet Farm inspected the products received. On each occasion, those retailers noted that the orders were incomplete. The shipment was missing significant volumes of GT and EME products.

24. As a result of the missing products, Menards and Fleet Farm refused to pay GT for the missing products and Menards also charged GT penalty fees for the defective shipments.

25. The total amount of refused payments and penalty fees amounts to $268,041.83.

26. Adding insult to injury, GT discovered that many of its missing products that were to be delivered by NFI to Menards and Fleet Farm were being sold on an Amazon marketplace retailer named Lowest_Price_Highest_Quality_Fastest_Shipping. GT did not sell or authorize the sale of its products to this retailer and neither Menards nor Fleet Farm sold these products to this marketplace retailer. *See* **Exhibit A**, Amazon Marketplace online product listings selling GT's lighting products.

27. In fact, the sales price of GT's lighting products on Lowest_Price_Highest_Quality_Fastest_Shipping's listing is less than GT's manufacturing costs, making it impossible that GT authorized the sale of its products through this retailer.

28. Prior to initiating this action, GT made repeated requests to NFI to compensate GT for its losses associated with its failure to ensure that GT's products arrived to Menards and Fleet Farm in good condition.

29. NFI has refused to accept responsibility for its failures and the harm that it has caused GT.

## FIRST CAUSE OF ACTION
### Carmack Amendment, 49 U.S.C. § 14706

30. GT repeats and incorporates by reference each and every allegation set forth in Paragraphs 1 through 29, inclusive.

31. NFI was an interstate motor carrier.

32. GT provided NFI and/or its sub-contractors products to be transported to retailers around the country. NFI accepted those products based on bills of lading.

33. For each shipment, GT delivered its and EME's products to NFI in good condition.

34. NFI then invoiced GT for each completed shipment and GT tendered payment to NFI.

35. At some point during transport, NFI allowed or caused GT's products to be removed from the truck.

36. Upon delivery of GT's and EME's shipment to Menards and Fleet Farm, the retailers discovered that the shipments were missing some of GT's and EME's products, some of which later appeared on websites of retailers who did not order products from GT or its retailers. In other words, NFI failed to deliver all the shipped products in good condition.

37. GT's actual loss resulting from the lost and/or destroyed products during transport amounts to at least $268,041.83.

38. Pursuant to 49 U.S.C. § 14704 (e), GT is entitled to an award of attorneys' fees.

## JURY DEMAND

Pursuant to Federal Rule of Procedure 38, GT hereby demands a trial by jury on all issues so trial.

## PRAYER FOR RELIEF

WHEREFORE, GT Industrial Products, LLC respectfully requests that this Court enter judgment in its favor granting the following relief:

A. That Judgment be entered in favor of GT and against NFI for no less than $268,041.83;

B. That the Court enter an award of attorneys' fees, costs, and expenses;

C. That GT be awarded pre-judgment and post-judgment interests to the maximum extent provided by law; and

D. That GT be awarded such other and further relief as the Court deems just and proper.

Respectfully submitted this 8th day of November, 2024.

s/ *Gregory S. Tamkin*
Gregory S. Tamkin, (CO Bar No. 27105)
Brittany L. Garza, (CO Bar No. 55278)
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202
Telephone: (303) 629-3400
Email: tamkin.greg@dorsey.com
Email: garza.brittany@dorsey.com

*Attorneys for Plaintiff GT Industrial Products, LLC*